# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

SCOTT B.,

      Plaintiff,

vs.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

No. 23-cv-4036-LTS

**REPORT AND
RECOMMENDATION**

_____

      Scott B. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed in part** and **remanded in part**.

## I.     BACKGROUND

      Claimant was born in 1974. (AR[1] at 304.) He is a college graduate. (_Id_. at 308.) Claimant allegedly became disabled due to migraines, back-nerve damage, bulging disc in neck/nerve damage, memory issues, PTSD, balance issues, left rotator cuff tear, neuropathy in both legs, RLS[2], and sleep apnea. (_Id_. at 307.) Claimant's onset of

---

[1] "AR" cites refer to pages in the Administrative Record.
[2] This appears to mean "Restless Leg Syndrome." (_See e.g.,_ AR at 845.)

disability date is January 31, 2021.[3] (*Id*. at 17, 19.) On May 24, 2021, Claimant protectively filed his application for DIB. (*Id*. at 17.) His claim was denied originally on September 13, 2021 (*id*. at 93, 106-115), and was denied on reconsideration on July 7, 2022. (*Id*. at 94, 95-105.) A hearing was held on January 11, 2023, with Claimant and his attorney Kimberly Schram[4] appearing in person before Administrative Law Judge ("ALJ") David Buell. (*Id*. at 56-92.) Vocational Expert ("VE") Jennifer LaRue also appeared at the hearing telephonically. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 1, 2023. (*Id*. at 17-31.)

Claimant requested review and the Appeals Council denied review on April 13, 2023. (*Id*. at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On June 14, 2023, Claimant timely filed his Complaint in this Court. (Doc. 4.) On, November 27, 2023, all briefing was completed, and the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage

---

[3]In his application for DIB, Claimant's alleged onset of disability date was January 1, 2021. (AR at 304.) However, at the hearing, he amended the alleged onset date to January 31, 2021. (*Id*. at 17.)

[4] In the instant judicial review action, Claimant is represented by attorney Wes Kappelman.

in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the

ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

4

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    The ALJ's Findings

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2025. (AR at 19.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of January 31, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the left acromioclavicular joint, chondromalacia of the left knee, migraine headaches, obesity, post-traumatic distress order, and panic disorder. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 20.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine resulting in compromise of a nerve root), 1.18 (abnormality of a major joint), and 11.02 (epilepsy), 12.06 (anxiety disorders), and 1 12.15 (PTSD). (*Id.* at 20-22.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except with the following limitations: able to stoop, kneel, crouch, and crawl occasionally; able to reach overhead with the left arm occasionally; can perform work that does not require the

operation of foot control, climbing ladders, or other exposure to hazards such as work at unprotected height; is able to perform work in a setting with no more than moderate background noise; can perform simple tasks; is able to exercise proper judgment in performing those tasks; is able to respond appropriately to routine changes in the workplace; and is able to interact with coworkers, supervisors, and the public occasionally.

(*Id.* at 22.) Also at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id.* at 29.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including housekeeper, merchandise marker, and assembler of electronic accessories. (*Id.* at 29-30.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 30.)

**B.    *The Substantial Evidence Standard***

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it]

been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to include all the limitations found Dr. Jones-Thurman, an opinion the ALJ found persuasive, in the RFC assessment; (B) failing to address a possible conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding Claimant's overhead reaching with his non-dominant arm; and (C) making a flawed RFC determination based on erroneous inferences concerning Claimant's cervical collar, cane, and service dog at the hearing and based on failing to fully and fairly develop the record. (Doc. 10.)

Claimant also argues that the ALJ who heard his claim was not constitutionally appointed. (*Id.*)

## A.    Dr. Jones-Thurman's Opinions

### 1.    Parties' Arguments

Claimant argues that the "ALJ found the opinions of Dr. Jones-Thurman, the psychological consultative examiner, persuasive," yet the ALJ did not "account for Dr. Jones-Thurman's 'short and simple instructions' limitation expressly in the RFC determination." (Doc. 10 at 17.) Claimant maintains that "[a] 'simple, routine, repetitive tasks' limitation is too much different from a 'short, simple instructions' [limitation] such that further discussion from the ALJ for why the short, simple limitation was not in the RFC was required." (*Id.* at 18.) Claimant seeks remand for further development of this issue. (*Id.*)

The Commissioner argues that the ALJ "properly analyzed Dr. Jones-Thurman's opinions." (Doc. 14 at 12.) The Commissioner maintains that Claimant "cannot show a material difference between 'short and simple' and 'simple tasks.'" (*Id.* at 16.) The Commissioner concludes that Claimant's argument lacks merit and points out that "this one-word difference ('short') is between a psychologist's opinion, which the ALJ considered along with the entire, 1,693-page record, and the ALJ's residual functional capacity finding." (*Id.* at 18.)

### 2.    Pertinent Medical Evidence

On August 31, 2021, Claimant underwent a psychological evaluation with Dr. Rosanna M. Jones-Thurman, Ph.D. Claimant reported the following regarding his mental health history:

> [Claimant] reports that he started having mental health issues after Iraq. Loud noises bother him, as well as crowds, people, and just too many people and too much stimulation. He reports that he doesn't like to go out, doesn't socialize, and occasionally has panic attacks. He can't do open

spaces and has to lock the doors and have his back to the wall to see everything. He can't do a call center where there is too much talk, chatter, and over-stimulation. When he has panic attacks, his chest will tighten, he can't breathe, his heart pounds, and he wants to get out. Sometimes he has to leave to go to the bathroom or be able to be somewhere where he can be alone. He reports that he doesn't get many panic attacks now because he is home alone most of the time, and it depends on the situation. He doesn't like to feel trapped and doesn't like a roomful of people.

He reports that there is a lot going on now, so it makes him kind of depressed. He reports that previously, he was not so depressed and has some anxiety. He reports that his mother is dying. His best friend from Iraq is also dying, and it is depressing to know that they are both going to die shortly. He reports that he is not real thrilled about the direction the country is going with the issues in Afghanistan and that brings back a lot for him and feeling like we have wasted time doing things over there.

He does see someone at the VA Clinic in Carroll. Initially, he reported that person was a therapist, but it is not therapy. It is some type of nurse practitioner who does his mental health medications. He has never been hospitalized for mental health problems and reports that he has been diagnosed with PTSD. He has done a lot of evaluations in the past. He reports that once a year, he has to meet with that person to review his medications and go over things.

He reports that he doesn't sleep and goes to bed around 3:00 to 4:00 a.m. He only gets about four to five hours of sleep at the most. His appetite is variable, and he reports that sometimes things are okay, and sometimes not.

(AR at 1152-53.) On the mental status examination, Dr. Jones-Thurman found:

[Claimant] was neat in appearance, appropriate and wellgroomed. He is 6'0" and weighs 260 pounds. . . . His behavior during the interview was appropriate. He was open and cooperative with the examiner. His speech was within the normal range and understood. His speech was normal for volume, rate and tone.

He was oriented to time, place and person, and in contact with reality. He was able to state the day, month and year, location of the facility and

9

identity of the examiner. His memory for immediate, recent and remote events was grossly intact as measured by his ability to repeat six digits forward and four digits in reverse, indicate what he had done on the previous day, and recall events from the past. He was able to do serial seven's. He was able to spell a word forward and backward correctly. His ability to do arithmetic calculations was intact for addition, subtraction, multiplication and division. His concentration and attention were intact, as measured by his ability to respond to questions. His fund of information was intact for giving the current and past presidents. He was able to demonstrate ability to do abstract reasoning, by solving similarities and differences. He was able to interpret a proverb. His thought organization was coherent and logical. He denied any thought process distortion, delusions, illusions, etc. and no signs or symptoms of such were noted during the interview. He appeared to be of average intellectual ability.

This patient is demonstrating a mood disturbance. His affect was appropriate to his mood, which was normal. He noted vegetative signs of depression such as sleep disturbance and appetite disturbance. He denied any current suicidal or homicidal ideation. He does not appear to be an imminent risk of dangerousness to himself or others. His judgments for posed events, such as finding an envelope or seeing smoke were within the normal range.

(*Id.* at 1153-54.) Dr. Jones-Thurman diagnosed Claimant with PTSD (by history), panic disorder, and adjustment disorder with mixed anxiety and depressed mood. (*Id.* at 1154.) Dr. Jones-Thurman found that Claimant's prognosis, overall, was "fairly good." (*Id.*) Dr. Jones-Thurman concluded that:

[Claimant] does not have any problems with thought processing or thought content. His mood and affect were fairly normal[.] . . . There are no recurrent episodes of deterioration when stressed that would result in withdrawal from the situation or an exacerbation of symptoms. He is able to sustain attention and concentration for task completion and maintain pace. He could remember and understand short and simple instructions. He could carry out short and simple instructions under ordinary supervision. He can interact appropriately with supervisors, co-workers, and the public, but doesn't like being around crowds or certain enclosed places. He would be able to adapt to some changes in his environment. He

10

does not have any restrictions of activities of daily living because of mental health, although he does avoid going out and being around a lot of people. He does not have any difficulties with social functioning. He does still interact with his family and friends.

(*Id.*)

### 3. Relevant Law

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. Id. § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id*.

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 4. Analysis

In considering Dr. Jones-Thurman's opinions, the ALJ determined that:

The undersigned is persuaded by the opinion of the consultative psychological examiner Rosanna Jones-Thurman, Ph.D. that the claimant could perform simple tasks in a routine work environment with limited interaction with others (Exhibit 9F). This opinion is persuasive because it is supported the claimant's oral history and Dr. Jones-Thurman's own generally unremarkable mental status findings during her evaluation of the claimant (Exhibit 9F). In addition, the opinion is overall consistent with the evidence in the record as a whole. As discussed above, this includes evidence the claimant's overall stability with anxiolytic medications; generally unremarkable mental status findings; the claimant's reported ability to live with family, attend to his personal care without problems, take care of his service dog and cats, prepare simple meals, clean the house and perform other indoor household chores, drive a car, shop in stores, use the internet to shop online, count change, work on his writing projects, work on small projects in his shop, do gunsmithing and use a bench sander to shape metal files into smaller objects that he would sell at a fair, socialize with family and a few close friends, get along with authority figures, read, travel to New Mexico to visit his grandmother, spend a lot of time working in his hobby shop, and watch television and movies; and the claimant's own statements that he could have continued his work at Goodwill if he had been allowed to retain a private office where the talking and distraction would have been less and that he sometimes spends the whole day working on his fiction books (See Exhibits 3E, 13F, 21F, 22F, Hearing Testimony). For these reasons, the undersigned is persuaded by the opinion of Dr. Jones-Thurman.

(AR at 28.)

The ALJ interpreted Dr. Jones-Thurman's opinion that Claimant "could carry out short and simple instructions under ordinary supervision," *see* AR at 1154, as Claimant having the ability to "perform simple tasks in a routine work environment[.]" (AR at 28.) Relying on *Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017) and *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), Claimant argues that carrying out "short and simple instructions" is inconsistent with performing "simple tasks" and requires further explanation from the ALJ. In *Gann*, two medical professionals opined that the claimant was limited in the ability to adapt to work environments due to the combination of her

mental and physical impairments. The ALJ gave both medical professionals' opinions "significant weight," but did not include any adaptive limitations in the RFC or hypothetical questions posed to the vocational expert. The Eighth Circuit remanded the case to the Commissioner because "the hypothetical posed to the VE did not contain all of Gann's limitations and impairments" and "the VE's testimony [could] not be viewed as substantial evidence that Gann [was] able to perform other work in the national economy." 864 F.3d at 952-53. In *Lawrence*, the Fourth Circuit Court of Appeals addressed the issue of "whether there is an apparent conflict between Lawrence's residual functional capacity and the DOT's definition of Level 2 reasoning." 941 F.3d at 142-43. The Fourth Circuit noted that in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) "this court found an apparent conflict between the claimant's residual functional capacity, which limited her to jobs involving 'short, simple instructions,' and Level 2's concept of 'detailed but uninvolved instructions.'" *Lawrence*, 941 F.3d at 143 (citing *Thomas*, 916 F.3d at 313-14). Lawrence argued that "there is no meaningful difference between Thomas's residual functional capacity and hers, which limits her to 'simple, routine, repetitive tasks.'" *Id*. The Fourth Circuit disagreed and reasoned that:

> Even assuming that "tasks" and "instructions" are synonymous, the key difference is that Thomas was limited to "short" instructions. "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.
>
> In contrast, the administrative law judge found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's residual functional capacity (as determined by the administrative law judge) and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [ ] variables." DOT, App. C, 1991 WL 688702.
>
> To begin with, detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they

may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (citing Webster's Third New Int'l Dictionary 1191, 2499 (2002)). Finally, "routine" and "repetitive" tasks may involve a few variables, just as driving directions may vary if a road is closed.

Thus, while there was an apparent conflict in *Thomas*, there is none here.

*Id.* at 143-44.

Claimant's reliance on *Lawrence* and *Gann* is misplaced and both cases are easily distinguishable from the present case. First, Claimant is not actually relying on *Lawrence* but instead relying on *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), which was addressed in *Lawrence*. Nevertheless, *Thomas* is of no help to Claimant either, as it focused on the inconsistency between "short" instructions and "detailed" instructions. That is not at issue in this case. Second, *Gann* involved a situation where the ALJ gave "significant weight" to two medical sources who both determined the claimant had adaptive limitations, but the ALJ did not include any adaptive limitations in the RFC. That is not the situation here. In this case, the ALJ, finding Dr. Jones-Thurman's opinions persuasive among other pertinent evidence, limited Claimant to performing "simple tasks" in part based on Dr. Jones-Thurman's opinion that Claimant would be able to carry out "short, simple instructions." *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation"); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The interpretation of physicians' findings is a factual matter left to the ALJ's authority"); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Third,

14

the ALJ properly determined that Dr. Jones-Thurman's opinions were supported by internal consistency. Specifically, the ALJ determined that Dr. Jone-Thurman's opinions were supported by both Claimant's oral history and Dr. Jones-Thurman's "own generally unremarkable mental status findings during her evaluation of the claimant (Exhibit 9F)." (AR at 28.) Fourth, the ALJ properly found Dr. Jones-Thurman's opinions consistent with the overall medical record, including unremarkable mental status findings, stability with medication use, and Claimant's activities of daily living. (*See id.*)

Based on the foregoing, it is clear that the ALJ found Dr. Jones-Thruman's opinions supported and consistent with the record as a whole as they related to the limitations he placed on Claimant's ability to work. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Jones-Thurman's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

## B.    *Non-Dominant Arm Overhead Reaching*

### 1.    *Parties' Arguments*

Claimant notes that the hypothetical question posed to the VE containing his RFC contained a limitation of "able to reach overhead with the left arm occasionally," his non-dominant arm. (Doc. 10 at 14) (citing AR at 22, 85-86.) Claimant points out that the VE "identified jobs that, per the DOT . . ., require the ability to frequently reach with both arms, as reaching is defined as in any direction and with both arms." (*Id.*) Claimant asserts that the "vocational expert testimony did not recognize or discuss this conflict with the DOT, raising an SSR 00-4p issue given the ALJ relied on this testimony in this step five denial of benefits." (*Id.*) (citing AR at 30; 86-91.) Claimant maintains that the "plain language of SSR 00-4p prevented the ALJ from relying on the vocational expert's

testimony to deny benefits, given the apparent conflict with the DOT had been left unresolved." (*Id.* at 16.) Claimant concludes that SSR 00-4p demands remand.

The Commissioner argues that the "ALJ and Vocational Expert resolved any issue with [Claimant's] slightly diminished ability to reach overhead with his non-dominant arm." (Doc. 14 at 8.) According to the Commissioner, "[a]fter all the vocational expert's testimony about the ALJ's first hypothetical question with occasional, left-arm, overhead reaching and subsequent hypotheticals, the ALJ asked the vocational expert about the basis for her conclusions on points not addressed in the [DOT] ([AR] at 91), which would include reaching direction" and the VE "responded that her opinions were 'based off my education and work background in the field' ([AR] at 91)." (*Id.* at 9.) The Commissioner asserts that the VE "explained the differences, including those related to reaching, between her testimony and the [DOT] and the ALJ properly accepted her explanation." (*Id.* at 10.) The Commissioner concludes that:

> [Claimant] cannot show conflict because his overhead reaching restriction, from frequently to occasionally, only affected his non-dominant, left arm. None of the descriptions for the three jobs specified frequent reaching with both arms and this is relevant to the lack of conflict. [Claimant] cannot show a discrepancy between the [DOT] descriptions, the vocational expert's testimony, and the ALJ's hypothetical question.

(*Id.* at 11) (citing *Seals v. Colvin*, No. 3:14CV00302 PSH, 2015 WL 8967789 (E.D. Ark. Dec. 15, 2015)).

### 2. *Relevant Law*

"Under Social Security Ruling (SSR) 00–4p, the ALJ must ask about any possible conflict between VE evidence and information provided in the DOT." *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014) (quotation omitted). "If there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the

explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Id*. at 989-90 (alterations in original) (quoting SSR 00–4p, 2000 WL 1898704, at *2-*4 (Dec. 4, 2000)). An ALJ "is not absolved of this duty merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." *Id*. at 990 (citing *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). "A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation." *Id*. (*Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir.2014)); *see also Thomas v. Berryhill*, 881 F.3d 672, 677-78 (8th Cir. 2018) ("An expert generally seeks to resolve such a discrepancy by specifying that he has limited his testimony to only those jobs within the DOT description that someone with the relevant RFC can perform and, in more recent years under the Commissioner's policy on apparent unresolved conflicts, by explaining the basis of his opinion that jobs within that narrower subset exist in significant number.") (Citations omitted). "Absent adequate rebuttal, however, VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id*. (quoting *Kemp*, 743 F.3d at 632). Indeed, an ALJ "may not rely on unexplained expert testimony that someone with a particular RFC is qualified to do a job that the DOT describes as exceeding it." *Thomas*, 881 F.3d at 678 (citations omitted).

### 3.    Analysis

Under the DOT, "reaching" is defined as "extending the hands and arms in any direction." *Kemp*, 743 F.3d at 632. In *Kemp*, the claimant was limited to only occasional overhead reaching. *Id*. at 633. The VE testified that the claimant could perform a job that required constant reaching. *Id*. The Eighth Circuit remanded and observed that:

> While the ALJ gave specific directions to the VE before he testified, the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical describing a claimant who could

reach overhead only occasionally, and [the] DOT job listing . . . indicating that a check-weigher job involved constant reaching. Further, the VE did not explain the possible conflict and the ALJ sought no such explanation. Thus, the Commissioner did not meet her burden, at step five of the sequential evaluation process, of establishing that jobs existed in the economy that Charles was capable of performing.

*Id*. (citations omitted).

Similarly, in *Moore*, the claimant was limited to occasional overhead reaching, but the VE testified to two jobs that required frequent reaching. 769 F.3d at 989. The Eighth Circuit noted that the DOT does not specify "the direction of reaching for either type of work," but "[n]evertheless, when asked by the ALJ, the VE confirmed that her testimony was consistent with the DOT." *Id*. The Eighth Circuit determined that remand was necessary because the VE failed to adequately address the conflicts between the jobs she cited, and the limitation of occasional overhead reaching and concluded that "the ALJ improperly relied on the testimony of the VE without resolving this apparent conflict" and "the Commissioner failed to meet her burden of proving that Moore was not disabled in step five of the sequential evaluation process." *Id*. at 990.

In *Block v. Saul*, No. C18-118-LTS, 2020 WL 1505566 (N.D. Iowa Mar. 30, 2020), Judge Strand addressed the conflict between a claimant who was limited to no overhead reaching and VE testimony that the claimant could perform her past relevant work, which under the DOT, required frequent reaching. Judge Strand remanded finding that the VE and the ALJ did not adequately address the conflict and explained that:

> In responding to the ALJ's first hypothetical, the VE testified that a left-handed person who is limited to no overhead reaching and only occasional gross manipulation with the left arm could perform Block's past relevant work as a dispatcher. . . . However, the DOT description for a motor vehicle dispatcher includes frequent reaching, meaning 1/3rd to 2/3rd of the work day. DOT 249.167-014. And, for purposes of the DOT, reaching is defined as "extending the hands and arms in any direction." *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014) (citation omitted). Thus, to

18

perform the job of dispatcher, an employee must be able to spend a significant part of the work day "extending the hands and arms in any direction."

Given this information, the VE's testimony that a claimant who is unable to reach overhead with the claimant's dominant hand can perform the job of dispatcher appears to conflict with the DOT description for that job. At minimum, this is a potential conflict that should have been addressed on the record. Based on his training and experience, the VE might well have been able to explain why this is not an actual conflict. Or, at least, the VE may have been able to resolve the conflict. Unfortunately, he was not asked to do so. Even a few additional questions posed by the ALJ could have (a) established that the VE's opinion is consistent with the DOT, (b) permitted the VE to explain any inconsistency or, perhaps, (c) alerted the VE that his opinion does not jibe with the DOT's definition. Any of these outcomes would have avoided the current situation, in which the administrative record provides no explanation for a vocational-expert opinion that appears to be inconsistent with the DOT.

In short, the ALJ erred by failing to ask the VE if his opinion is consistent with the DOT. I cannot find the error to be harmless because there appears to be an actual conflict between the VE's opinion and the DOT description of how Block's past relevant work is generally performed. Therefore, the ALJ's Step Four determination is not supported by substantial evidence and Block's objection must be sustained. This case will be remanded with directions for the ALJ to explore the issues of (1) whether the VE's testimony is consistent with the DOT and, if not, (2) whether the inconsistency can be resolved.

*Id.* at *8-*9.

In *Heins v. Saul*, No. 19-CV-2043-LTS, 2020 WL 6052583, at *6 (N.D. Iowa June 11, 2020), *Report and Recommendation adopted by Heins v. Saul*, No. C19-2043-LTS, 2020 WL 4369450 (N.D. Iowa July 30, 2020), I addressed a similar situation:

Just as the hypothetical in *Block* limited the claimant to no overhead reaching with her left dominant arm, the hypothetical in this case limited [c]laimant to "never reach overhead with her right dominant hand. . . ." The DOT describes both document preparer and addresser as jobs requiring

reaching frequently, which means reaching exists one-third to two-thirds of the time, just as the dispatcher job did in *Block*. Under Social Security regulations, "reaching" still means "extending the hands and arms in any direction." *Kemp*, 743 F.3d at 632. Thus, under *Block*, to perform the jobs of addresser and document preparer, "an employee must be able to spend a significant part of the work day 'extending the hands and arms in any direction.'" 2020 WL 1505566, at *8. Here, as in *Block*, the VE's testimony that a claimant who is unable to reach overhead with the claimant's dominant hand can perform the jobs of addresser and document preparer "appears to conflict with the DOT description[s] for [those] job[s]. At minimum, this is a potential conflict that should have been addressed on the record. Based on his training and experience, the VE might well have been able to explain why this is not an actual conflict. Or, at least, the VE may have been able to resolve the conflict. Unfortunately, he was not asked to do so." *Id*. Telling the VE before he began testifying to inform the ALJ if his testimony conflicted in any way with the DOT and explaining that the VE had an obligation to explain any such conflict did not suffice. . . . The ALJ had an affirmative duty to identify the conflict and resolve it. SSR 00-4P ("[O]ur adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT). . . ."). The ALJ did not do so.

Therefore, there is an apparent unresolved conflict between the reaching requirements of the jobs of document preparer and addresser the ALJ relied on to deny benefits and Claimant's right arm overhead reaching limitation. Accordingly, substantial evidence does not support the ALJ's decision on this issue and these two jobs must be stricken from the total number of jobs available in the national economy that are available to Claimant.

*Id*. at *6.

*Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015) is a DOT-VE testimony conflict case that this very similar to the facts present in this case. In *Pearson* the Fourth Circuit addressed the conflict as follows:

The vocational expert testified that Pearson was not disabled because he could perform three occupations available in sufficient numbers in the national economy. For all three, the Dictionary lists frequent reaching as

a requirement. Dictionary at 323.687–014, 1991 WL 672783; 211.462–010, 1991 WL 671840; 690.685–014, 1991 WL 678500. The Dictionary defines reaching as "[e]xtending hand(s) and arm(s) in any direction." App. C, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles C–3. The ALJ found Pearson's nondominant arm could only occasionally reach upward.

Pearson contends that "the plain meaning of 'reaching,'" as defined by the Dictionary, "encompasses overhead reaching. . . ." According to Pearson, because the Dictionary does not specify the type of reaching involved, all of the listed occupations may require bilateral overhead reaching. . . . The Commissioner maintains that the Dictionary only requires some form of frequent reaching, not necessarily frequent bilateral overhead reaching, for these occupations. The Commissioner claims that, because Pearson can frequently reach bilaterally in every direction but overhead, and can frequently reach overhead with one arm, no conflict exists.

Although the Dictionary does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the Dictionary's broad definition of "reaching" means that they certainly may require such reaching. Comparing the Dictionary definition to Pearson's limitations, the vocational expert's testimony that Pearson could fulfill the requirements of these occupations apparently conflicts with the Dictionary. Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching. If the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits. If the expert's explanation is reasonable, the ALJ can resolve the apparent conflict with the Dictionary and rely on the expert's testimony.

Deciding that the vocational expert's testimony apparently conflicts with the Dictionary here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. . . .

Directly addressing this conflict is important because even if some motel cleaners, cashiers, and bench press operators need not frequently reach overhead with both arms, the number of positions in the national economy without this requirement matters. An ALJ can only find a claimant not disabled at step five of the analysis if the Commissioner proves that the claimant can perform other work that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c). So it is not enough that some positions exist in which the worker need not frequently reach overhead with both arms. The vocational expert must testify to how many of these positions do not require frequent bilateral overhead reaching. Likely at least some have this requirement. If there are a sufficient number of these positions that do not require frequent bilateral overhead reaching, the ALJ can properly find Pearson not disabled. If too many do have this requirement, the ALJ will necessarily find that Pearson cannot do work that exists in significant numbers in the national economy.

*Id.* at 210-11.

Here, the ALJ began his questioning of the VE by asking:

Q:     Okay. I want to ask you, first of all, if the responses you give us today are [inconsistent] to the information found in the DOT, or if your answer addresses subjects that are not themselves defined or quantified in the DOT, would you tell me about that, please?

A:     Yes.

(AR at 85.) Hypotheticals posed to vocational experts are often compound in the sense that they include multiple questions calling for a single response. There is nothing inherently objectionable about a compound hypothetical question. However, this question and response do not constitute the ultimate hypothetical. This preliminary question and response nevertheless form an important component in determining if the ALJ properly resolved a conflict between the VE's testimony and the DOT description discussed below. The compound nature of this question and the concomitant response, make it difficult to rely on for any purpose.

In the hypothetical question itself, the ALJ limited Claimant to only occasionally reaching overhead with his left arm. (*Id.* at 85-86.) Including that limitation, the VE testified that Claimant could perform the jobs of housekeeper, electronics assembler, and merchandise marker. (*Id.* at 86.) All three of those jobs require frequent reaching. *See* DICOT 323.687-014 (Housekeeper); DICOT 209.587-034 (Marker); DICOT 729.687-010 (Electronics Assembler). Contrary to the Commissioner's assertion that "[t]he vocational expert explained the differences, including those related to reaching, between her testimony and the [DOT] and the ALJ properly accepted her explanation," *see* Doc. 14 at 10, the VE did not explain the differences related to reaching. The only follow-up that the ALJ asked the VE related to extra breaks and missing work:

Q:   And just to follow-up, Ms. LaRue, particularly on those last two factors of extra breaks and missing work, and if there are any others, what's the basis for your conclusion on those points because I'm quite sure those are not addressed in the DOT? What's your foundation for that?

A:   That's based off my education and work background in the field.

(AR at 91.) Because "reaching" is defined as "extending the hands and arms in any direction," *Kemp*, 743 F.3d at 632, and the VE's testimony that a claimant who is unable to reach overhead with the claimant's non-dominant arm can perform the jobs of housekeeper, electronics assembler, and merchandise marker appears to conflict with the DOT descriptions for those jobs, this is a potential conflict that should have been addressed on the record. Telling the VE before he began testifying to inform the ALJ if his testimony conflicted in any way with the DOT and explaining that the VE had an obligation to explain any such conflict is not enough. *See Moore*, 769 F.3d at 990 (providing that an ALJ "is not absolved of this duty merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT"); *see also Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018) ("Because that conflict was 'apparent' and

not just 'possible,' the ALJ needed to do more than have the expert affirm that his testimony was consistent with the DOT."). The Eighth Circuit has held that "[w]e do not believe that the generic character of the DOT's job descriptions can in and of itself resolve a discrepancy between a job's requirements as set forth in the DOT and a vocational expert's testimony that someone with a more limited RFC is qualified to do it." *Thomas*, 881 F.3d at 677. The ALJ had an affirmative duty to identify the conflict and resolve it. SSR 00-4P ("[O]ur adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT). . . ."). The ALJ did not do so.

Accordingly, because there appears to be an actual conflict between the VE's testimony and the DOT description of how the identified jobs, housekeeper, electronics assembler, and merchandise marker are performed, the ALJ's Step Five determination is not supported by substantial evidence. Contrary to the Commissioner's arguments, this outcome is consistent with *Kemp*, *Moore*, *Block*, *Heins*, and *Pearson*. Therefore, I recommend that this case be remanded with directions for the ALJ to address the issues of (1) whether the VE's testimony is consistent with the DOT and, if not, (2) whether the inconsistency can be resolved.

## C.    *Whether the Record is Fully and Fairly Developed*

Claimant is critical of the ALJ's reliance on the fact that he was wearing a soft cervical collar and using a cane at the hearing in finding that his appearance was inconsistent with his allegations of disability. (Doc. 10 at 19-21.) Specifically, the ALJ noted:

> Furthermore, the undersigned notes that the claimant's observed presentation has, at times, been inconsistent with his allegations. For example, at the hearing, the undersigned observed the claimant to walk into the hearing room with a soft cervical collar and use of a cane. He was

accompanied by a large dog with a harness bearing the words "service dog." He also had a backpack. However, he was able to doff and don the backpack with no apparent difficulty. Similarly, in October 2022, the claimant's primary care provider observed the claimant to present holding his left shoulder in a very rigid position and using his shirt buttons to support his left shoulder with his hand (Exhibit 22F/7). Nevertheless, the claimant's provider noted that the claimant was able to straighten out his elbow, flex his wrist, and use his left hand to guide his service dog (Id.). These observations are inconsistent with the claimant's allegations and presentation.

(AR at 26.) Claimant points out that he had neck surgery on January 6, 2023, five days before the administrative hearing. (Doc. 10 at 20.) Claimant also points out that he fractured his ankle in October 2021, had surgery in November 2021, and underwent physical therapy through May 2022. (*Id.* at 21.) In the hearing, when asked by the ALJ about the cane, Claimant stated "I don't have to use it all the time. I use it when—I—I have balance issues. And it's been since I—I crushed my leg." (AR at 84.) Further, Claimant points out that, Dr. Jones-Thurman, who the ALJ found persuasive, noted that "he had done well with a certain type of environment and being able to have his service dog in the past." (AR at 1154.) Claimant maintains that the "ALJ's erroneous inferences regarding [his] need for a cervical collar, cane, and service dog at the hearing were harmful" and require remand. (Doc. 10 at 22.)

Claimant also argues that the ALJ did not fully develop the record with regard to his left ankle injury. (*Id.* at 23-25.) Claimant notes that, given the recency of his left ankle injury in October 2021, at the reconsideration stage of the administrative process, the Social Security Administration referred Claimant to Dr. Michael Luft, D.O., for a physical evaluation. (*Id.* at 24.) Claimant points out that in finding Dr. Luft's opinions unpersuasive, the ALJ, among other reasons, focused on a typo by Dr. Luft and

Claimant's improvement after seeing Dr. Luft. (*Id.* at 24-25; AR at 27-28.) Specifically, the ALJ determined in pertinent part that:

> The undersigned is not persuaded by the opinion of consultative examiner Michael Luft, D.O., who examined the claimant one-time in April 2022 and opined that the claimant would generally be limited to a range of sedentary work with lifting up to 20 pounds; standing and sitting a total of four hours each with frequent position changes; no climbing, kneeling, stooping, or crawling; and would have poor attendance owing partly to migraines (Exhibit 19F). Although this opinion is supported by Dr. Luft's refence to the claimant's recent left ankle fracture with resulting lack of motion of his left ankle and foot, antalgic gait, and use of a Bledsoe boot on the left (Exhibit 19F). However, Dr. Luft appears to have been under the impression that the claimant's left ankle injury occurred in November 2012 and was still causing the limitations that Dr. Luft was observing in April 2022 (Exhibit 19F/5 and 7). However, this injury had actually only recently occurred in November 2021 and the claimant was still in the process of recovering from this acute injury at the time of his examination by Dr. Luft (See Exhibits 14F, 17F, and 18F). In addition, Dr. Luft's opinion is inconsistent with evidence of the claimant's improvement in his November 2021 left ankle fracture with medical treatment (See Exhibits 17F, 18F, and 21F/55 and 67). For example, by July 2022, the claimant was again noted to have intact 5/5 motor strength in his lower extremities and a normal gait without mention of Bledsoe boot or assistive device (Exhibit 23F/13).

(AR at 27-28.) The problem with the ALJ's analysis is that Dr. Luft's citation to November 2012 is clearly a typo not a misunderstanding. On the same page that the ALJ cites where Dr. Luft used the November 2012 date, Dr. Luft correctly notes that Claimant's ankle surgery was in November 2021. (*Id.* at 1530.) Moreover, the ALJ's citations to the record for evidence of improvement after Dr. Luft's evaluation are incorrect. Exhibits 17F and 18F all pre-date Dr. Luft's evaluation. Exhibit 21F at 55 and 67 are from June 2022, but state that Claimant was still in a boot, still attending physical therapy, and indicate that he is still recovering from the ankle surgery, but it is going well. (*Id.* at 1598, 1610.) Finally, the ALJ's citation to the July 2022 treatment

note (Exhibit 23F/13) is a treatment note for follow-up regarding left knee pain and mentions nothing about Claimant's recovery from ankle surgery or any lasting difficulties with his ankle.

Additionally, Claimant notes that, prior to the hearing, Claimant's attorney, Kimberly Schram, informed the ALJ by letter that she was having difficulty procuring VA Compensation & Pension examinations that Claimant underwent in 2020 and 2021 and the VA used as evidence in determining Claimant's disability under the VA regulations. (AR at 256-67, 376.) While it is unclear whether Ms. Schram ever received these records or whether the ALJ attempted to procure these records, it seems clear that such records would be relevant to Claimant's disability determination. Similarly, while only implicitly argued by Claimant, it does not appear that medical records pertaining to Claimant's neck surgery five days prior to the administrative hearing were ever obtained or placed into the record. Again, it seems likely that such records would be relevant to Claimant's disability determination.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008). A fully and fairly developed record is important because the ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the

RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

In reviewing Claimant's arguments regarding the development of the record in this case, it appears to me that there are some problems with the development of the record. There are no records regarding Claimant's neck surgery which occurred five days prior to the administrative hearing in this case. There are serious problems with the ALJ's analysis of Dr. Luft's opinions, particularly a lack of record development with regard to Claimant's recovery from ankle surgery in November 2021. Additionally, it is unclear whether either Claimant's attorney or the ALJ ever obtained the VA Compensation and Pension examination records, but it seems obtaining these records would be relevant to the determination of whether Claimant is disabled. Finally, while the evidence in the record is light, it is at least plausible that development of the record with regard to Claimant's use of a cane for balance in light of his ankle injury and Claimant's use of a service dog in relation to his PTSD would also be relevant to determining whether Claimant is disabled. Based on the foregoing observations regarding the underdevelopment of the record in this case, and because I am recommending that remand is required to address the issues of (1) whether the VE's testimony is consistent with the DOT and, if not, (2) whether the inconsistency can be resolved, I am also recommending that this case be remanded for further development of the record with regard to Claimant's January 2023 neck surgery, November 2021 ankle surgery, recovery, and use of a cane, need for a service dog, and obtaining the VA Compensation and Pension examination records.

### D. *Whether the ALJ was Properly Appointed*

Claimant argues that the ALJ in this case was not constitutionally appointed because Acting Commissioner Nancy Berryhill was not properly serving as Acting Commissioner pursuant to the Federal Vacancies Reform Act when she ratified the

appointment of ALJs, including the ALJ in this case, in July 2018. (Doc. 10 at 29-36.) Claimant also asserts that "if this Court does order remand for another reason argued in principal briefing" this issue "can be treated as moot." (*Id*. at 27.) Regardless of the mootness issue, Claimant's argument is foreclosed by *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *cert. denied Dahle v. O'Malley*, 144 S.Ct. 549 (2024). In *Dahle*, the Eight Circuit, unequivocally rejected Claimant's argument, concluding that "Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs." *Id*. at 429. Claimant acknowledges that *Dahle* "will control the outcome of this issue unless that opinion is overturned." (Doc. 10 at 28.) The Supreme Court denied certiorari on January 8, 2024. *Dahle v. O'Malley*, 144 S.Ct. 549 (2024). Accordingly, Claimant's argument lacks merit and he is not entitled to relief on this issue.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM in part and REMAND in part** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 10th day of September, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa